# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4608-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

C.C.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF R.C. and J.N.,

      Minors.

_____

Submitted June 6, 2019 – Decided June 20, 2019

Before Judges Simonelli and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0025-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Beryl Vurnen Foster-Andres, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Frank Robinson Moceri, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

Defendant, C.C. (Carla), appeals from a May 15, 2018 judgment of guardianship terminating her parental rights to her minor children, R.C. (Ryan), J.N. (John).[1] We affirm.

We discern the following facts from the record. Carla is the mother of three boys, Ryan, John and Jim. Jim is in the custody of his biological father and is not a subject of this litigation. The Division of Child Protection and Permanency (Division) first became involved with this family in June 2015 after receiving referrals that the children were inadequately supervised because Carla left them with elderly relatives and her young sibling. It was also alleged that

---

[1] We use pseudonyms to protect the identity of the family pursuant to Rule 1:38-3(d)(12) and for ease of reference.

Carla was abusing drugs. Carla continued to leave the children with her elderly relatives or with her younger sibling, and this continued pattern of behavior contributed to an established finding of neglect. The Division did not immediately take custody of the children and allowed Carla to place Ryan with a family friend and John with his paternal grandmother, R.W. Carla was ordered to undergo a substance abuse evaluation and other services while the children remained under the care and supervision of the Division and resided with their resource parents.

Carla was noncompliant with numerous ordered services. She visited the children but did not assist the resource parents. From the inception of the litigation, the Division continued to provide and recommend services to Carla to facilitate reunification. Although Carla underwent a psychiatric evaluation, she did not engage in any of the services recommended by the psychiatrist. Ultimately, the Division took custody of the children, but they remained with their resource parents. On January 25, 2017, due to Carla's resistance to services, the Division changed its permanency goal to termination of parental rights followed by adoption. On March 8, 2017, the Division filed its complaint for guardianship. John's biological father was added as a defendant, but he

executed an identified surrender and John remained with his grandmother.  The Division was unable to determine the identity of Ryan's biological father.

Previously, on December 3, 2016, Carla gave birth to another child, Jake. Jake remained in Carla's custody despite her resistance to offered services.  She was living with relatives and a boyfriend, A.M., and began to undergo counseling.  On June 11, 2017, Carla left Jake alone with A.M.  An autopsy determined Jake died that day from closed head trauma with extensive anoxic encephalopathy and the death was ruled a homicide.  The Division substantiated A.M. for abuse.  Notwithstanding Jake's death, Carla continued to live with A.M. The Division suspended Carla's visits with Ryan and John.  The Division arranged for a psychological evaluation as well as parental and caregiver bonding evaluations with Leticia Calendar, Ph.D.

The guardianship trial commenced on May 14, 2018.  During the trial, the Division presented the testimony of two witnesses, the Division caseworker, Janice Braxton, and Calendar.  Carla did not attend the trial.

Braxton's testimony chronicled the Division's involvement with the family.  She testified about the numerous services offered to Carla, Carla's resistance to engagement and her sporadic visits with her children.  Braxton also

testified about Carla's unwillingness to separate herself from A.M. for the protection of her children.

Calendar, the Division's expert in psychology and bonding, conducted evaluations based on observations between Carla and her children and the children and their resource parents. Calendar noted John had an insecure attachment to Carla but a healthy bond to his resource parent. Ryan had no bond with Carla and a healthy bond with his resource parent. Calendar opined it would be harmful to remove the children from their current placements.

The trial court entered a judgment of guardianship on May 15, 2018, after rendering detailed findings in an oral opinion. This appeal followed.

On appeal, Carla argues the Division did not prove the four prongs of N.J.S.A. 30:4C-15.1(a) because she never harmed her children, she completed a number of services and she was denied a fair trial. In particular, she argues there was no evidence of neglect or abuse when her children were removed from her care, her boyfriend was not indicted for her son's death and there was no evidence she ever committed harm to her children when she visited with them. She asserts she completed a substance abuse program and other services and that the substance abuse evaluations and psychological evaluations are not

ameliorative. Finally, she argues the judge erred by failing to admit the bonding

evaluations into evidence. We reject all of these arguments.

A.

"A parent's right to enjoy a relationship with his or her child is

[fundamental and] constitutionally protected." In re Guardianship of K.H.O.,

161 N.J. 337, 346 (1999). However, "[p]arental rights . . . are not absolute. The

constitutional protection surrounding family rights is tempered by the State's

parens patriae responsibility to protect the welfare of children." Id. at 347.

Under N.J.S.A. 30:4C-15.1(a), the Division can initiate a petition to

terminate parental rights on the basis that such termination is in the "best

interests of the child" if the following standards are met:

> (1) The child's safety, health, or development has been
> or will continue to be endangered by the parental
> relationship;
>
> (2) The parent is unwilling or unable to eliminate the
> harm facing the child or is unable or unwilling to
> provide a safe and stable home for the child and the
> delay of permanent placement will add to the harm.
> Such harm may include evidence that separating the
> child from his resource family parents would cause
> serious and enduring emotional or psychological harm
> to the child;
>
> (3) The [D]ivision has made reasonable efforts to
> provide services to help the parent correct the
> circumstances which led to the child's placement

outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.

"Appellate review of a trial court's decision to terminate parental rights is limited, and the trial court's factual findings 'should not be disturbed unless they are so wholly unsupportable as to result in a denial of justice.'" In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We are obligated to accord deference to the trial court's credibility determinations based upon the judge's opportunity to observe and hear the witnesses. Cesare v. Cesare, 154 N.J. 394, 412 (1998).

To satisfy the first prong of the best interests standard, the parental relationship "must be one that threatens the child's health and will likely have continuing deleterious effects on the child." K.H.O., 161 N.J. at 352. Generally, "proofs in termination cases 'focus on past abuse and neglect and on the likelihood of it continuing.'" N.J. Div. of Youth & Family Servs. v. F.H., 389

N.J. Super. 576, 609 (App. Div. 2007) (quoting In re Guardianship of J.C., 129 N.J. 1, 10 (1992)). Moreover, in guardianship and adoption cases, the child's need for permanency and stability is central. K.H.O., 161 N.J. at 357. Additionally, injury to the child's growth and development should not be the result of "economic deprivation or lack of resources but to a fundamental lack of the most precious of all resources, the attention and concern of a caring family." N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 613 (1986).

After fully reviewing the evidence presented and making credibility determinations, the trial judge determined the safety, health or development of John and Ryan were in danger. The judge found the danger was due to Carla's irresponsible actions, including her unaddressed substance abuse, ineffective participation in services and her decision to reside with her boyfriend after her infant child died from blunt force trauma to the head while in his care. A parent's continued failure to provide a safe and stable home to her children constitutes harm that can satisfy the first and second prongs of the best interest test. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 451 (2012). We are satisfied that the record fully supports the trial judge's findings.

## B.

"The second prong of the [test] relates to parental unfitness." K.H.O., 161 N.J. at 352. There are two ways to establish this prong: (1) the State must show that "the child's health and development have been and continue to be endangered" and "the harm is likely to continue because the parent is unable or unwilling to overcome or remove the harm"; or (2) "the parent is unable to provide a safe and stable home for the child and that the delay in securing permanency continues or adds to the child's harm." Id. at 348-49.

The trial judge considered the expert testimony of Calendar and agreed that Carla's longstanding history and behavior demonstrate she is unwilling or unable to care for her children, and the Division had demonstrated Carla would not be able to parent in the near future. We are satisfied that the record contains clear and convincing evidence establishing prong two.

## C.

The third prong requires the Division to make reasonable efforts to provide services in order to help the parent correct the circumstances that led to the child's placement outside the home. N.J.S.A. 30:4C-15.1(a)(3). Reasonable efforts will vary with the circumstances. F.H., 389 N.J. Super. at 620. This factor requires the Division to make "diligent efforts to reunite the family."

9

K.H.O., 161 N.J. at 354. A "parent's failure to become a caretaker for her children is not determinative" of whether the third prong has been met because the reasonableness of the Division's efforts "is not measured by their success." In re Guardianship of DMH, 161 N.J. 365, 393 (1999).

The trial court found reasonable efforts, outlining a history of therapeutic services, visits, evaluations, paternity tests, offers of transportation assistance and other services. The trial judge's findings as to prong three are established by clear and convincing evidence in the record.

D.

The fourth prong, that termination of parental rights will not do more harm than good, "serves as a fail-safe against termination even where the remaining standards have been met." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 609 (2007). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008). If a child can be returned to the parent without endangering the child, the parent's right to reunification takes precedence over the permanency plan. A.W., 103 N.J. at 608.

That the child has bonded with the foster parent does not alone justify the termination of parental rights. N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 263 (App. Div. 2005). When parents expose "a child to continuing harm . . . and [are] unable to remediate the danger to the child, [who] has bonded with the foster parents who have provided a nurturing and safe home, . . . termination of parental rights likely will not do more harm than good." E.P., 196 N.J. at 108.

In establishing this prong, the State should adduce testimony from a "well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with the [biological and] foster parent[s]." J.C., 129 N.J. at 19. "The question . . . is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O., 161 N.J. at 355.

In addition, the Division must prove the parent's actions or inaction contributed to the forming of the bond between the child and the foster parents, and "the harm caused to the child from severing that bond rests at the feet of the parent." N.J. Div. of Youth & Family Servs. v. D.M., 414 N.J. Super. 56, 80

(App. Div. 2010). "A child's need for permanency [and stability] is an important consideration[.]" <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 281 (2007).

In the present case, we are satisfied the trial court properly determined that there was sufficient evidence to satisfy prong four. The trial judge considered evidence as to each of the two children individually, finding by clear and convincing evidence that each was flourishing in their foster homes, and Carla had not made sufficient progress to safely parent either child or ameliorate harm to them if placed in her care. We discern no reason to disturb that determination.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION